**NOT FOR PUBLICATION**

**FILED**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

APR 1 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

SMART APPAREL (U.S.), INC.,

Plaintiff - Appellant,

v.

NORDSTROM, INC.,

Defendant - Appellee.

No. 24-2269

D.C. No.
2:23-cv-01754-TLF

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
Theresa Lauren Fricke, Magistrate Judge, Presiding

Argued and Submitted March 7, 2025
Pasadena, California

Before: TALLMAN, CLIFTON, and CHRISTEN, Circuit Judges.

Smart Apparel appeals the district court's order granting Nordstrom's

motion to dismiss Smart Apparel's claims for breach of contract and breach of the

implied covenant of good faith and fair dealing. Because the parties are familiar

with the facts, we do not recount them here. We have jurisdiction pursuant to 28

U.S.C. § 1291. Reviewing the district court's order de novo, *Mudpie, Inc. v.*

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

*Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021), we reverse and remand.

1. We begin with Smart Apparel's claim for breach of contract.

*Sanctioned Person Warranties.* Under the plain meaning of the agreement, U.S. Customs and Border Protection's (CBP) issuance of the press release did not provide Nordstrom with "reason to believe" that Smart Apparel violated either of the two "Sanctioned Person" warranties in Paragraph 8 of the agreement. *See Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005). Nordstrom lacked reason to believe that Zhejiang Sunrise Garment Group Co. Ltd. (Sunrise), Smart Apparel's ultimate corporate parent, qualified as a Sanctioned Person under the agreement because Sunrise was not "subject to trade restrictions" within the meaning of the agreement.

In context, the term "trade restrictions" refers to coercive economic measures akin to "sanctions." In the press release, CBP announced its intent to detain merchandise from Sunrise pursuant to the "rebuttable presumption" in 22 U.S.C. § 9241a. That provision deems certain goods prohibited under federal law unless CBP receives clear and convincing evidence that the goods were not produced with involuntary labor. *Id.* Thus, a final prohibition is imposed only if certain evidence is not provided after the goods are detained on entry; if it is provided, the prohibition does not apply and the goods at issue will be released.

*See id.* CBP's announcement of its intent to enforce § 9241a by detaining merchandise from Sunrise does not constitute a "trade restriction" within the meaning of the agreement because the presumption, which triggers a temporary detention of goods pending production of evidence, is not a coercive economic measure analogous to a "sanction."[1]

*Involuntary Labor Warranties.* The CBP press release did not provide Nordstrom with reason to believe that Smart Apparel violated the involuntary labor warranties in Paragraphs 7 and 9 of the agreement because Smart Apparel alleged that Nordstrom knew, based on years of audits and the parties' course of dealings, that Smart Apparel did not use involuntary labor in its supply chain. According to the complaint, "Smart Apparel did not utilize forced labor or North Korean labor in its supply chain" and it regularly engaged "independent third-party companies" to audit its facilities to confirm this key fact. Smart Apparel alleged that Nordstrom knew about these audits, which covered the fabric mills and garment assembly facilities at issue, and that no audit ever indicated the use of forced labor or North Korean labor at any inspected facility.

Taking these well-pleaded allegations as true, as we must on a motion to dismiss, Smart Apparel adequately alleged that Nordstrom lacked reason to believe

---

[1] Here, the presumption was never even triggered as none of Sunrise's merchandise was detained by CBP following the press release.

that Smart Apparel violated the Sanctioned Person warranties in Paragraph 8 and the involuntary labor warranties in Paragraphs 7 and 9 of the agreement. *Judd v. Weinstein*, 967 F.3d 952, 955 (9th Cir. 2020). Thus, Smart Apparel adequately stated a claim for breach of contract and the district court erred by dismissing the claim.

2. We next address Smart Apparel's claim for breach of the implied covenant of good faith and fair dealing. Washington law imposes "in every contract an implied duty of good faith and fair dealing," which requires that "the parties perform in good faith the obligations imposed by their agreement." *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991).

The agreement bestowed on Nordstrom the discretionary authority to reject merchandise under certain circumstances, but the implied duty of good faith and fair dealing limited this authority by requiring Nordstrom to exercise it in good faith. *See Rekhter v. State*, 323 P.3d 1036, 1041 (Wash. 2014). Nordstrom insists it did not breach this duty because the agreement's express terms permitted cancellation of the purchase orders, but "[i]t is, of course, possible to breach the implied duty of good faith even while fulfilling all of the terms of the written contract." *Id.* (citation omitted). Smart Apparel alleged that Nordstrom breached this duty by relying on the CBP press release as a pretext for cancelling the purchase orders in order to manage its excess inventory. According to the

complaint, although Nordstrom asserted that it had reason to believe that Smart Apparel violated the warranties in the agreement, it in fact knew that Smart Apparel had not. Smart Apparel further alleged that Nordstrom did not relent even after Smart Apparel presented reports of new audits conducted after Nordstrom's cancellation and flew its representatives to Nordstrom's Seattle headquarters to demonstrate the absence of forced labor in its supply chain. Because these allegations suggest that Nordstrom failed to exercise its discretionary authority in good faith, Smart Apparel adequately stated a claim for breach of the implied covenant of good faith and fair dealing and the district court erred by dismissing the claim.

**REVERSED and REMANDED.**